Laurie A. TUCKER (now White), Respondent,

v.

Eric S. TUCKER, Appellant.

No. WD 62455.

Missouri Court of Appeals,
Western District.

Jan. 13, 2004.

Mark A. Hubbard, Platte City, MO, for appellant.

Scott L. Campbell, Platte City, MO, for respondent.

Before VICTOR C. HOWARD, P.J., and LOWENSTEIN and SMART, JJ.

VICTOR C. HOWARD, Presiding Judge.

Eric Tucker appeals from the circuit court's denial of his motion to quash a Notice of Income Withholding filed by his ex-wife, Laurie Tucker (now White). Eric [1] maintains his maintenance obligation terminated upon Laurie's remarriage, so the amount of arrearages was incorrect because there was no past-due maintenance.

As explained below, we hold that section 452.370.3 [2] operated to terminate Eric's maintenance obligation upon Laurie's remarriage, so there was an error in the amount of arrearages. Accordingly, we reverse and remand for proceedings consistent with this opinion.

## Background

The parties were married on May 9, 1987. On May 10, 2001, Laurie filed a petition for dissolution of the marriage. On October 1, 2001, the parties entered into a "Marital Separation and Settlement Agreement." The Agreement provided in relevant part that "[Eric] shall pay to [Laurie] contractual, non-modifiable, non-dischargeable maintenance" in the following amounts and on the following terms: $800 per month beginning October 1, 2001, for twelve months; $400 per month beginning October 1, 2002, for twelve months; and $200 per month beginning October 1, 2003, for twelve months. Section "(D)" of the Agreement further provided, "[t]he parties understand and agree that this is contractual maintenance pursuant to a Separation Agreement of the parties and that it is not modifiable by any Court, notwithstanding the approval of [the] Agreement by any Court in a Judgment Decree of Dissolution of Marriage."

On October 4, 2001, the Circuit Court of Platte County entered its Judgment Decree of Dissolution of Marriage, dissolving the marriage and expressly incorporating, among other things, the terms of the Agreement's maintenance provisions, including the fact that Eric's maintenance obligation was "contractual," "non-modifiable," and "non-dischargeable."

On June 15, 2002, Laurie remarried, and Eric ceased paying maintenance. On November 1, 2002, Laurie filed a Notice of Income Withholding.[3] Eric timely filed a

---

1. For simplification reasons, we refer to the parties by their first names. In doing so, we mean no disrespect to either party.

2. Unless otherwise noted, statutory references are to RSMo 2000.

3. This wage assignment for the sum of $2,200 relates to arrearages in Eric's maintenance and child support obligations. The amounts of these separate obligations are not separated in the Income Withholding Order. The propriety of the wage assignment as it relates to Eric's child support obligation is not an issue before this court. Thus, we consider whether there was an error in the amount of arrearages in the wage assignment only as it relates to Eric's maintenance obligation.

request for hearing pursuant to section 452.350.4 or Motion to Quash the wage assignment on the grounds that there was a "mistake of fact" or error in the amount of arrearages because his maintenance obligation terminated upon Laurie's remarriage. After a hearing, the circuit court denied Eric's motion without explanation. The court also denied Eric's Motion to Vacate Judgment without explanation. This appeal follows.

## Discussion

■ On appeal, Eric claims the circuit court erred in entering judgment denying his motion to quash the wage assignment. He maintains his obligation to pay Laurie maintenance terminated by operation of law pursuant to section 452.370.3 upon her remarriage.

■ We will affirm the circuit court's judgment unless: there is no substantial evidence to support it; it is against the weight of the evidence; or it erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976); *Reeves v. Reeves*, 890 S.W.2d 369, 371 (Mo. App. E.D.1994). Where, as here, the circuit court makes no specific findings of fact or conclusions of law, we consider all fact issues as having been determined in accordance with the result reached. *Id.;* Rule 73.01.

The issue is whether Eric's obligation to pay maintenance terminated by operation of section 452.370.3 upon Laurie's June 15, 2002, remarriage. Section 452.370.3 provides:

Unless otherwise agreed in writing or expressly provided in the judgment, the obligation to pay future statutory maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance.

In support of his argument that his maintenance obligation terminated upon Laurie's remarriage, Eric relies on *Cates v. Cates*, 819 S.W.2d 731 (Mo. banc 1991), and its progeny. In *Cates*, our supreme court held, in relevant part, that section 452.370.2, RSMo 1986, now section 452.370.3, "creates a rebuttable presumption that the obligation to pay statutory maintenance terminates upon the remarriage of the receiving party or the death of either party." *Id.* at 734. This presumption is rebutted in one of two ways: (1) the parties agree in writing that the obligation to pay statutory maintenance extends beyond remarriage or death, or (2) the court's decree of dissolution expressly extends the obligation to pay future statutory maintenance beyond the death of either party or the remarriage of the receiving party. *Id.* In *Glenn v. Snider*, 852 S.W.2d 841, 843 (Mo. banc 1993), the supreme court reiterated the conclusion in *Cates* that "the statute should operate to terminate maintenance payments on remarriage where the decree and agreement are silent." *See also Reeves*, 890 S.W.2d at 371–72, and *Hall v. Hall*, 53 S.W.3d 214, 220 (Mo.App. S.D.2001) (the decrees and agreements were silent on the effect of remarriage, so there was nothing to rebut the statutory presumption of termination. Accordingly, the husbands' maintenance obligations terminated upon the wives' remarriages.).

Laurie claims the maintenance award survives her remarriage because the Agreement provided the maintenance was "non-dischargeable," so it was not "silent" on the issue. In other words, she claims the presumption of termination was rebutted in this case because the parties "otherwise agreed in writing" that maintenance would survive her remarriage. Citing general definitions of "discharge" from Black's Law and Webster's Dictionaries, she argues:

The term [']non-dischargeable['] mandates that a person could not be released from a debt or duty. Therefore, Appellant's maintenance obligation could not be terminated by [her] remarriage because the Agreement specifically provided otherwise.

\* \* \*

This is a case of when language is sufficient to rise to the level of 'enough is enough' to make a deal binding. [She] submits that the language contained in the Marital Separation And Settlement Agreement is more than enough to put any reasonable person on notice that the maintenance obligation would not be reduced or increased for any reason. Likewise, it is equally clear that the maintenance obligation would not be terminated upon [her] remarriage.

She insists the Agreement's language "that the maintenance is contractual, non-modifiable, non-dischargeable maintenance ... clearly falls within the mandates of *Cates* and *Glenn*." She also argues *Reeves* is distinguishable, because "in *Reeves,* there was no mention of what happened to the maintenance obligation upon remarriage. In the case at bar, the Agreement specifically provided that the maintenance. was non-dischargeable."

We disagree. The provision in the Agreement and the court's decree that Eric's maintenance obligation is "non-dischargeable" is not "enough" or sufficient to rebut the presumption under section 452.370.3 that Eric's obligation to pay maintenance terminated upon Laurie's remarriage. Instead, we agree with Eric that the restriction in the Agreement that his maintenance obligation is "non-dischargeable" does not suggest there can be *no* "discharge" of the obligation, at least not in the generic sense of the term "discharge" as argued by Laurie. Rather, it is clear that the qualification in the Agree-

ment providing Eric's maintenance obligation is "non-dischargeable," as that legal term of art is commonly used, connotes or conveys that Eric cannot discharge the maintenance obligation in bankruptcy. *See* 11 U.S.C.A. § 523(a)(5) (1993) (providing that a maintenance obligation arising out of a settlement agreement or court decree is an "[e]xception[ ] to discharge" under the discharge sections in Title 11 of the Bankruptcy Code, meaning a maintenance obligation is "non-dischargeable" *in bankruptcy* ), and BLACK'S LAW DICTIONARY 464 (6th ed.1990) (defining a "[d]ischargeable claim" as, "[i]n bankruptcy, a claim which is barred by bankrupt's discharge if properly scheduled. See Bankruptcy Code § 727.") Parties and courts customarily include such notice of non-dischargeability of obligation provisions in separation agreements and court decrees. *See, e.g., Glenn,* 852 S.W.2d at 842 (where the court's decree provided, "[t]he court contemplates that this obligation shall not be dischargeable *in bankruptcy* ") (emphasis added).

*Cates* and subsequent cases discussing the "unambiguous language" of section 452.370.3 clearly put "careful drafter[s]" on notice that if the parties so intend, section 452.370.3 requires that the parties must state such intent in writing or the court's decree must expressly provide the maintenance obligation extends beyond remarriage or death. *Cates,* 819 S.W.2d at 738; *Reeves,* 890 S.W.2d at 372. Here, the Agreement's qualification of Eric's maintenance obligation as "non-dischargeable" is not sufficient to prove the parties "otherwise agreed in writing" that maintenance was to survive Laurie's remarriage. Nor did the court's decree expressly provide that the maintenance obligation would survive Laurie's remarriage. Because the presumption of termination in section 452.070.3 was not rebutted, Eric's mainte-

nance obligation terminated when Laurie remarried.

As the obligated party, Eric successfully contested the wage assignment under section 452.350.4 by showing there was an error in the amount of arrearages.

Point granted.

### Conclusion

For the foregoing reasons, the judgment is reversed and the cause remanded to the circuit court for proceedings consistent with this opinion.

LOWENSTEIN and SMART, JJ., concur.