

# SUPREME COURT OF MISSOURI
## en banc

CITY OF CHESTERFIELD, et al.,    )    *Opinion issued December 24, 2019*
    )
    Appellants,    )
    )
v.    )    No. SC96862
    )
STATE OF MISSOURI, et al.,    )
    )
    Respondents.    )

### APPEAL FROM THE CIRCUIT COURT OF COLE COUNTY
The Honorable Jon E. Beetem, Judge

The City of Chesterfield and its mayor, Bob Nation, brought a declaratory judgment action against the state, seeking a declaration that sections 66.600 and 66.620[1] are constitutionally invalid special laws. St. Louis County, Ballwin, Florissant, Manchester, University City, Webster Groves, and Wildwood (collectively, "the Intervenors") intervened as defendants. The circuit court granted summary judgment in favor of the state and the Intervenors (collectively, "the Defendants"). In its judgment, the circuit court held sections 66.600 and 66.620 are not special laws. Chesterfield appeals, asserting the trial court erred in failing to find that section 66.600 is a constitutionally invalid special law because the general assembly changed its population classification to exclude St. Charles

---

[1] All statutory references are to RSMo 2000, unless otherwise noted.

County. It further asserts the trial court erred in failing to find that section 66.620 is a constitutionally invalid special law because it creates a closed class based on immutable, historical, and geographical facts and is not substantially justified.

The circuit court did not err in granting summary judgment for the Defendants. Pursuant to the analysis for special laws in *City of Aurora v. Spectra Communications Group, LLC*, No. SC96276, __ S.W.3d __, *18 (Mo. banc Dec. 24, 2019), sections 66.600 and 66.620 are presumptively constitutional and not special laws if their classifications were supported by a rational basis. In their suggestions in support of their motions for summary judgment, the Defendants articulated a rational basis for the classifications in sections 66.600 and 66.200. Accordingly, sections 66.600 and 66.620 are not special laws, and the circuit court did not err in entering summary judgment for the Defendants. The circuit court's judgment is affirmed.

**Factual and Procedural Background**

Chesterfield is located in St. Louis County. In 1977, St. Louis County adopted a county sales tax pursuant to section 66.600.1, which now provides:

> The governing body of any county of the first class having a charter form of government and having a population of nine hundred thousand or more may, by adopting an ordinance, impose a countywide sales tax for the benefit of both the incorporated and the unincorporated areas of the county[.][2]

---

[2] When originally passed, section 66.600, RSMo Supp. 1977, provided:

> The governing body of any county of the first class having a charter form of government and not containing a city with a population of *four hundred thousand or more* may, by adopting an ordinance, impose a countywide sales tax for the benefit of both the incorporated and the unincorporated areas of the county[.]

(Emphasis added).

2

The revenues of a countywide sales tax collected pursuant to section 66.600 are distributed as provided in section 66.620, also enacted in 1977.  Section 66.620.2 now provides:

> [F]or the purposes of distributing the county sales tax, the county shall be divided into two groups, "Group A" and "Group B".  Group A shall consist of all cities, towns and villages which are located wholly or partly within the county which levied the tax and which had a city sales tax in effect under the provisions of sections 94.500 to 94.550 on the day prior to the adoption of the county sales tax ordinance, except that beginning January 1, 1980, group A shall consist of all cities, towns and villages which are located wholly or partly within the county which levied the tax and which had a city sales tax approved by the voters of such city under the provisions of sections 94.500 to 94.550 on the day prior to the effective date of the county sales tax. For the purposes of determining the location of consummation of sales for distribution of funds to cities, towns and villages in group A, the boundaries of any such city, town or village shall be the boundary of that city, town or village as it existed on March 19, 1984. Group B shall consist of all cities, towns and villages which are located wholly or partly within the county which levied the tax and which did not have a city sales tax in effect under the provisions of sections 94.500 to 94.550 on the day prior to the adoption of the county sales tax ordinance, and shall also include all unincorporated areas of the county which levied the tax; except that, beginning January 1, 1980, group B shall consist of all cities, towns and villages which are located wholly or partly within the county which levied the tax and which did not have a city sales tax approved by the voters of such city under the provisions of sections 94.500 to 94.550 on the day prior to the effective date of the county sales tax and shall also include all unincorporated areas of the county which levied the tax.

St. Louis County is the only county governed by section 66.600 because it is the only first-class county having a charter form of government and a population of 900,000 or more.  Accordingly, it is the only county to which the provisions of section 66.620 apply. Section 66.620, in effect, classifies all cities in St. Louis County into two groups.  Group A consists of cities located at least partially within St. Louis County that passed a city sales tax prior to the county adopting the county sales tax.  Group B consists of all cities located

3

at least partially within St. Louis County that had not passed a city sales tax prior to the county adopting the county sales tax. St. Louis County sales tax revenues are distributed first to Group A cities based on the location of the sales. Section 66.620.4. The remaining county sales tax revenues are then distributed to Group B cities in proportion to their populations. *Id.*

When St. Louis County enacted its county sales tax in 1977, the area that now comprises Chesterfield was part of the county's unincorporated territory. Chesterfield incorporated as a city in 1988 and was classified as a Group B city under section 66.620, RSMo Supp. 1984.[3]

In 2014, Chesterfield brought the present declaratory judgment action against the state, claiming sections 66.600 and 66.620 are constitutionally invalid special laws. The Intervenors subsequently intervened as defendants, and the parties filed cross-motions for summary judgment. The circuit court overruled Chesterfield's motion for partial summary judgment, sustained the Defendants' motions for summary judgment, and entered summary judgment in favor of the Defendants, holding sections 66.600 and 66.620 are not special laws.

Chesterfield appeals. Because Chesterfield challenged the constitutional validity of sections 66.600 and 66.620, this Court has exclusive jurisdiction over the appeal. Mo.

---

[3] When enacted in 1977, section 66.620.3 gave newly incorporated cities the option of joining Group A or Group B. *See* 66.620.3, RSMo Supp. 1977. In 1984, however, section 66.620.3 was amended to remove the option allowing newly incorporated municipalities to elect which group to join. Since 1984, all newly incorporated municipalities become Group B cities.

4

Const. art. V, sec. 3. Chesterfield raises six points on appeal. Because Chesterfield's fourth and fifth points are dispositive, this Court addresses these claims of error out of turn.

## Standard of Review

This Court reviews a grant of summary judgment *de novo*. *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452 (Mo. banc 2011). To be entitled to summary judgment, the moving party must establish "there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law." *Id.* When the movant is a defending party, it must demonstrate:

> (1) facts negating any one of the elements of the non-movant's claim; (2) "that the non-movant, after an adequate period for discovery, has not been able and will not be able to produce sufficient evidence to allow the trier of fact to find the existence of any one" of the elements of the non-movant's claim; or (3) "that there is no genuine dispute as to the existence of the facts necessary to support movant's properly pleaded affirmative defense."

*Id.* at 453 (quoting *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 381 (Mo. banc 1993)). Accordingly, the Defendants may demonstrate they are entitled to judgment as a matter of law by negating an element of Chesterfield's claim that the statutes are constitutionally invalid special laws.

## Section 66.600

In its fifth point, Chesterfield asserts the circuit court erred in concluding section 66.600 is not a special law that violates article III, section 40(30) because St. Louis County is the only county that fits within the statute's population parameters. As originally enacted, section 66.600, RSMo Supp. 1977, permitted "any county of the first class having a charter form of government and not containing a city with a population of *four hundred*

5

*thousand or more*" to adopt a countywide sales tax benefiting the incorporated and the unincorporated areas of the county. (Emphasis added). In 1991, section 66.600 was amended to permit any first class county "having a charter form of government and having a population of *nine hundred thousand or more*" to adopt a countywide sales tax benefiting the incorporated and the unincorporated areas of the county. Section 66.600, RSMo Supp. 1991 (emphasis added). Chesterfield contends the 1991 amendment to the population requirement establishes the legislature intended section 66.600 to apply exclusively to St. Louis County because, at the time, St. Charles County met section 66.600's population requirements as originally enacted.

In opposing the Defendants' motions for summary judgment, Chesterfield asserted the *Jefferson County Fire* test[4] for overcoming the presumption that a population-based classification is constitutional should be applied to section 66.600's population classification. This Court abrogated the *Jefferson County Fire* analysis, however, in *City of Aurora*, __ S.W.3d at *15 n.9. In *City of Aurora*, this Court recognized the proper test for identifying a local or special law is a rational basis test: "[I]f the criteria for a class in a statute was supported by a reasonable basis, then the statute is not a local or special law and the analysis should stop there." *Id.* at *12. "Under rational basis review, this Court will uphold a statute if it finds a reasonably conceivable state of facts that provide a rational

---

[4] In *Jefferson County Fire Protection Districts Ass'n v. Blunt*, 205 S.W.3d 866, 870-71 (Mo. banc 2017), this Court examined whether a statute was a special law because the population-based classification was so narrow that no other county could possibly fall into the classification and created a multifaceted test for determining when the presumption a population classification is constitutional is overcome.

6

basis for the classifications.  Identifying a rational basis is an objective inquiry that does not require unearthing the general assembly's subjective intent in making the classification." *Id.* at *21-22 (internal citation and quotations omitted).

In their suggestions in support of their motion for summary judgment, the Intervenors asserted section 66.600's classification was supported by a rational basis because St. Louis County, unlike other counties in the state, has a large population, lacks a central city, has 90 separate municipalities within its borders, and has a large, unincorporated area.  The state further elaborated on facts that would provide a rational basis in its suggestions in support of its motion for summary judgment.  It noted St. Louis County is responsible for providing municipal-type services, such as police, street maintenance, and zoning, to the unincorporated areas while simultaneously providing county-type services, including court systems, jails, and roads, to the county as a whole. Given St. Louis County's distinctive features and responsibilities, section 66.600's applicability to only St. Louis County by operation of its population classification is supported by a rational basis.  Because there are reasonably conceivable facts that provided a rational basis for the classifications in section 66.600, the statute is not a special law, and the Defendants proved they were entitled to judgment, as a matter of law.  The circuit court did not err in entering summary judgment in favor of the Defendants on Chesterfield's constitutional challenge to section 66.600. [5]

---

[5] Because this Court finds the circuit court properly concluded section 66.600 is not an unconstitutional special law pursuant to article III, section 40(30) of the Missouri Constitution, this Court need not address Chesterfield's arguments that its special law claims were not barred under the doctrines of *res judicata*, estoppel, or laches.

**Section 66.620**

In its fourth point, Chesterfield asserts the circuit court erred in concluding section 66.620 is not a special law that violates article III, section 40(30) of the Missouri Constitution. Chesterfield argues that, because the classes set out in section 66.620 are based on immutable historical facts rather than open-ended criteria and there was no substantial justification for using a special law rather than a general law, section 66.620 is a constitutionally invalid special law.

As this Court clarified in *City of Aurora*, __ S.W.3d at *15-16, however, whether a statute's classification is based on open-ended or immutable characteristics is not the proper analysis for determining whether a law is a prohibited special law. Rather, if a law's classification is supported by a rational basis, then "the law is not local or special and the analysis ends." *Id.* at *18. As noted above, "this Court will uphold a statute if it finds a reasonably conceivable state of facts that provide a rational basis for the classifications." *Id.* at *21-22 (internal quotations omitted).

The state articulated two rational bases for section 66.620's classification in its suggestions in support of its motion for summary judgment. First, the state argued the classification addressed "the need for predictable and sound revenue streams that benefit the residents of Group B and provide significant percentages of the funding for services that benefit all county residents." Second, the state contended section 66.620's distribution scheme "discourages opportunistic behavior such as annexations or gerrymandering that are primarily or solely motivated by the sales tax distribution formulas in effect at a particular time."

8

The Intervenors also asserted in their suggestions in support of their summary judgment motion that section 66.620's classification is supported by the need to discourage opportunistic annexation of strong retail areas by Group A cities. This rationale is reflected in the circuit court's judgment, which noted that, prior to the 1984 amendment to section 66.620, "mayors of many Group B cities became concerned that Group A cities were targeting strong retail areas for annexation" and "the effect would be to shrink the population in Group B and reduce the amount of revenue . . . that goes to St. Louis County and the Group B cities."

Chesterfield does not dispute the need for predictable revenue streams for Group B cities or the allegations of opportunistic annexations. Instead, Chesterfield merely contends these issue are not unique to St. Louis County. While the need for predictable revenue streams for cities may not be unique, the circumstances of St. Louis County noted in the prior point are unique. Within the circumstances of St. Louis County, the criteria for section 66.620's Group A and B classifications reasonably serve the state's legitimate interest in providing stable revenue sources for Group B cities and discouraging opportunistic annexations. Because there were reasonably conceivable facts that provide a rational basis for the Group A and B classifications, section 66.620 is not a special law, and the Defendants were entitled to judgment, as a matter of law. Accordingly, the circuit court did not err in entering summary judgment in the Defendants' favor on Chesterfield's constitutional challenge to section 66.620.

**Conclusion**

There were rational bases for the legislature's classifications in sections 66.600 and 66.620. The circuit court did not err in granting summary judgment in favor of the Defendants on Chesterfield's claims because sections 66.600 and 66.620 are not constitutionally invalid special laws. The circuit court's judgment is affirmed.

_____
PATRICIA BRECKENRIDGE, JUDGE

Draper, C.J., Wilson, Russell, Powell,
and Stith, JJ., concur; Fischer, J., concurs
in result only.

10